# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:

CASE NO.: 6:18-bk-06437-KSJ
CHAPTER 7

James S. Pendergraft, IV,

    **Debtor.**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

---

**NOTICE OF OPPORTUNITY TO
OBJECT AND REQUEST FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at George C. Young Federal Courthouse, 400 W. Washington Street, Suite 5100, Orlando, FL 32801 and serve a copy on the movant's attorney, Attorney for Secured Creditor, at Robertson, Anschutz & Schneid, PL, 6409 Congress Ave., Suite 100, Boca Raton, FL 33487, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

Secured Creditor, Nationstar Mortgage LLC d/b/a Mr. Cooper, by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the automatic stay provisions for cause, and, in support thereof, states the following:

1. Debtor(s), James S. Pendergraft, IV, filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code on October 18, 2018.

2. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. **§**

1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3. Secured Creditor hereby waives the requirements of 11 U.S.C. § 362(e). The automatic stay of any act against property of the estate under § 362(a) shall continue until this Court orders or the stay is otherwise terminated by operation of law.

4. On June 9, 2006, Debtor(s) executed and delivered a Promissory Note ("Note") and a Mortgage ("Mortgage") securing payment of the Note in the amount of $267,700.00 to PHH Mortgage Corp (fka Cendant Mortgage Corp). The Mortgage was recorded on February 22, 2007 in Book 27218 at Page 199 of the Public Records of Prince Georges County, Maryland.   The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A."  The documents include copies of the Note with any required indorsements, Recorded Mortgage, Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

5. The terms and conditions of the Note and Mortgage were later amended pursuant to the Loan Modification Agreement ("Agreement") made June 23, 2014. Said Agreement created a new principal balance of $312,548.51.   A true and accurate copy of the Agreement is attached hereto as Composite Exhibit "A".

6. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts,

judgements, mortgages, and security agreements in support of right to see a lift of the automatic stay and foreclose if necessary.

7.  The mortgage provides Secured Creditor a lien on the real property located at 7904 Anne Court, Clinton, Maryland 20735, in Prince Georges County, and legally described as stated in the mortgage attached in Composite Exhibit "A."

8.  The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since May 1, 2018.

9.  The appraised value of the property is $281,300.00. See Exhibit "B" which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

10. As of the date of this Motion, the Debtor has not filed schedules or Statement of Intentions pertaining to the treatment of the subject property. The Trustee has not abandoned the property.

11. Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

12. If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

13. Secured Creditor respectfully requests the Court grant it relief from the Automatic Stay in this cause pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of

adequate protection to Secured Creditor for its interest in the above stated collateral. The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

14. Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage. Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

15. A Proposed Order accompanies this Motion. See Exhibit "C" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

Date: October 31, 2018

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Authorized Agent for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909

By:  _/s/ Shreena Augustin_____
　　 Shreena Augustin, Esquire
　　 Email: saugustin@rasflaw.com
　　 FL Bar Number: 0117598

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on October 31, 2018, I electronically filed the foregoing with

the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via

CM/ECF or United States Mail to the following parties:

James S. Pendergraft, IV
609 Virginia Drive
Orlando, FL 32803

Justin R Clark
Attorneys Justin Clark & Associates PLLC
500 Winderley Place, Suite 100
Maitland, FL 32751

Arvind Mahendru
5703 Red Bug Lake Road
Suite 284
Winter Springs, FL 32708

United States Trustee - ORL7/13
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Authorized Agent for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-997-6909

By:  _/s/ Shreena Augustin_____
     Shreena Augustin, Esquire
     Email: saugustin@rasflaw.com
     FL Bar Number: 0117598

# COMPOSITE EXHIBIT "A"



# NOTE

June 9, 2006                    **CLINTON**                    **Maryland**
       [Date]                          [City]                      [State]

### 7904 ANNE COURT, CLINTON, MD 20735

[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 267,700.00        (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **PHH Mortgage Corp (fka Cendant Mortgage Corp)**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        **6.895 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **01st**       day of each month beginning on **August 1st, 2006**       . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **July 1st, 2036**       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **3000 Leadenhall Road Mount Laurel, NJ 08054**
                                    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments
My monthly payment will be in the amount of U.S. $ **1762.18**        .

## 4. BORROWER'S RIGHT TO PREPAY
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

VMP®-5N (0207).01            Form 3200 1/01
       VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3            Initials:



CMI#:
PHH#:
Box#:            FNMA

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **Fifteen**     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be     **5.00%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 3200 1/01
Initials:

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JAMES PENDERGRAFT                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE

Rita Calendo, Assistant Vice President
PHH Mortgage Corporation

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

*[Sign Original Only]*



## LEGAL DESCRIPTION

A PARCEL OF LAND LOCATED IN THE CITY OF CLINTON, COUNTY OF PRINCE GEORGES, STATE OF MARYLAND, AND KNOWN AS: BEING LOT NUMBER 4 BLOCK 1 IN SUBURBAN ESTATES AS SHOWN IN THE RECORDED PLAT/MAP THEREOF IN BOOK WWW 55 PAGE 60 OF PRINCE GEORGES COUNTY RECORDS.

27218    199

When recorded mail to:
First American Title Insurance Co.,
Lenders Advantage
1100 Superior Avenue, Suite 200
Cleveland, Ohio 44114
ATTN: CENTRAL RECORDING

Prepared By:
**Anjana Shukla, 3000
Leadenhall Road Mount
Laurel, NJ 08054**

2001 FEB 22    A 10: 28
CLERK OF THE
CIRCUIT COURT



[Space Above This Line For Recording Data]
**30 yr Fixed (L30)**

# DEED OF TRUST
MIN

```
IMP FD SURE $        20.00
RECORDING FEE        25.00
TOTAL                40.00
Rest PG16    Rcpt $ 73183
PM    DWM    Blk 4 9768
                     10:29 am
```

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **June 9, 2006** ,
together with all Riders to this document.
**(B) "Borrower"** is **JAMES PENDERGRAFT, AN UNMARRIED MAN**, Emmartha F. Pendergraft
aka James JGH pendergraft IV.                                    "deceased"

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is **PHH Mortgage Corp (fka Cendant Mortgage Corp)**

Lender is a **Corporation**
organized and existing under the laws of **New Jersey**

MARYLAND-Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3021  1/01

*VMP*-6A(MD) (0005)
Page 1 of 15          Initials:
      VMP MORTGAGE FORMS - (800)521-7291

27218   200

Lender's address is **3000 Leadenhall Road Mount Laurel, NJ 08054**

**(D) "Trustee"** is **Michael Dufour, Esquire**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument**. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated **June 9, 2006**
The Note states that Borrower owes Lender **Two Hundred Sixty-Seven Thousand Seven Hundred Dollars and Zero Cents**                                            Dollars
(U.S. $**267,700.00**            ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **July 1st, 2036**          .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to

time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY              of              PRINCE GEORGES              :
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: █████████████              which currently has the address of
7904  ANNE  COURT              [Street]
CLINTON              [City], Maryland  20735              [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

27218   202

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's

27218    203

obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

27218    204

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

27218   205

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

-6A(MD) (0005)                    Page 7 of 15              Initials          Form 3021   1/01

27218    206

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**



27218    207

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6A(MD) (0005)                    Page 9 of 15                    Initials                    Form 3021    1/01

27218    208

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

-6A(MD) (0005)                    Page 10 of 15                    Initials                    Form 3021 1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

27218   210

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the**



27218   211

default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of        5.00 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

27218    212

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_Patricia L. Fulop_

_____ (Seal)
JAMES PENDERGRAFT                    -Borrower

aka James Scott pendergraft IV

_Dora Nold_

_____ (Seal)
                                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                                    -Borrower

27218    213

*FLORIDA, County of ORANGE*

STATE OF ~~MARYLAND, PRINCE-GEORGES~~    *ORANGE* County ss:

I Hereby Certify, That on this 09th    day of **June, 2006**    , before me, the subscriber, a
Notary Public of the State of ~~Maryland~~, in and for the ~~PRINCE-GEORGES~~ *County of ORANGE* ,
personally appeared **JAMES PENDERGRAFT** *Rn masita F. Pende graft (Deceased)*

*Aka*
*James Scott Pendergraft IV*

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledge that he/she/they executed the same for the purposes therein contained.

    AS WITNESS: my hand and notarial seal.
My Commission Expires:    *Mary E Spielvogel*
                    Notary Public



MARY E. SPIELVOGEL
MY COMMISSION # DD 217830
EXPIRES: September 28, 2007
Bonded Thru Budget Notary Services

STATE OF ~~MD~~ *New Jersey    Camden*    County ss:

    I Hereby Certify, That on this    9th    day of    *June 200*, before me, the subscriber,
a Notary Public of the State of ~~MD~~ *NJ*    and for the                    ,
personally appeared

the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the
consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum
of money advanced at the closing transaction by the secured party was paid over and disbursed by the party
or parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of
funds in the closing transaction or their respective agent at a time not later than the execution and delivery
by the Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties
secured and is duly authorized to make this affidavit.

    AS WITNESS: my hand and notarial seal.
My Commission Expires:    *Andrea J. Jackson*
                    Notary Public

*Andrea L. Jenkins*
*Notary Public*
*State of New Jersey*
*My Commission Expires 02/16/2011*

This is to certify that the within instrument was prepared **Anjana  Shukla**

*Anjana Shukla*

**Anjana  Shukla, PHH Mortgage Corporation**

27218    214

EXHIBIT A

A PARCEL OF LAND LOCATED IN THE CITY OF CLINTON, COUNTY OF
PRINCE GEORGES, STATE OF MARYLAND, AND KNOWN AS:

BEING LOT NUMBER 4 BLOCK 1 IN SUBURBAN ESTATES AS SHOWN IN
THE RECORDED PLAT/MAP THEREOF IN BOOK WWW 55 PAGE 60 OF
PRINCE GEORGES COUNTY RECORDS.



27218   2115

**(To Be Recorded With Deed of Trust)**

## AFFIDAVIT OF PRINCIPAL RESIDENCE

The loan secured by the attached Deed of Trust dated June 9, 2006, is secured against my principal residence. I/We am the original mortgagor(s) of the refinance transaction. The total principal amount secured by this loan shall not exceed $267,700.00 which is the unpaid principal amount of the original mortgage.

_____
JAMES PENDERGRAFT                                    (Borrower)

_____
(Borrower)

_____
(Date)

I hereby certify that on this _____ day of _____ , _____, before me, the undersigned, a Notary Public in said County and State, personally appeared the within named _____ known to me, or satisfactorily proven, to be the person whose name is subscribed to the within instrument and acknowledged the foregoing Deed to be his act, and in my presence signed and sealed name.

Witness my hand and notarial seal.

_Mary E. Spielvogel_
Notary Public (Seal)

My Commission Expires:

MARY E. SPIELVOGEL
MY COMMISSION # DD 217830
EXPIRES: September 26, 2007
Bonded Thru Budget Notary Services

0648130 (672804)

27218    216

# Maryland Refinance Affidavit

Statement made pursuant to the provisions of
Title 12, section 12-108
Of the tax-property article, annotated code of
Maryland

The herein described property in the foregoing Deed of Trust is the principal residence of one of the said parties who is one of the original mortgagors or subsequent obligors by assumption under that Deed of Trust and/or Mortgage dated the 14th of Oct, 2005 and recorded among the Land Records of Prince Georg County, in Liber 25269, Folio 087 that the amount of unpaid principal under the first mortgage is in the total amount of $ 232,922.76

_____
Borrower/Mortgagor

_____
Borrower/Mortgagor

State of  FLORIDA

County of  ORANGE

Sworn and Subscribed and under the penalties of perjury, before me, a Notary Public in and for the State and County aforesaid, this  5  day of  JUNE , 2006

_____
Notary Public

My Commission expires:

_____
9-26-07



MARY E. SPIELVOGEL
MY COMMISSION # DD 217830
EXPIRES: September 26, 2007
Bonded Thru Budget Notary Services

27218   217

**Office of Finance, Treasury Division**
**Finance Affidavit**

County Transfer Tax 1.4%
State Recordation Tax 4.40 per 1000.00
(Rounded to next 500.00)

**I/WE CERTIFY,** under the penalties of perjury, that the following are accurate responses regarding the financing we are offering for record on this date in accordance with Property Tax Article 12-102 & County Code 10-287(A)

**REQUIRED INFORMATION :** The following information refers to the loan(s) being refinanced or modified.

| LIBER/FOLIO | ORIGINAL LOAN AMOUNT | UNPAID PRINCIPAL BALANCE |
|---|---|---|
| 1) 25269/087 | 236,324.52 | 232,922.76 |
| 2) | | |

**A. STATE RECORDATION TAX – PRINCIPAL RESIDENCE**

_____ Initial here if: **COMPLETE REQUIRED INFORMATION ABOVE**

 a. This is a refinance of your principal residence.
 b. You are the original mortgagor or assumed the debt from the original mortgagor.
 _Recordation tax based on difference between new loan amount and the unpaid principal balance of the loan that is being refinanced._ **(NOTE: B-1 or B-2 must also be used)**

**B. COUNTY TRANSFER TAX – PRINCIPAL RESIDENCE**

1._____ Initial here if: **COMPLETE REQUIRED INFORMATION ABOVE ON REFI.**
 a. This is a new loan or a refinance on your principal residence.
 b. You had a purchase money trust/mortgage (Borrowed money to purchase property).
 c. The _purchase money_ trust/mortgage has been on record for more than 12 months.
 _Exempt from County Transfer Tax._ **(NOTE: If refinancing, A must also be used)**

2._____ Initial here if: **COMPLETE REQUIRED INFORMATION ABOVE.**
 a. This is a refinance of your principal residence.
 b. You did not have a purchase money trust/mortgage or it was recorded less than 12 months ago.
 _County Transfer Tax on the difference between the new loan amt. and the original amt. of the loan being refinanced._
 **REQUIRED: You must submit a recorded copy of the deed of trust being refinanced. (NOTE: A MUST be used)**

**C. COUNTY TRANSFER TAX – NON PRINCIPAL RESIDENCE**

_____ Initial here if: **COMPLETE REQUIRED INFORMATION ABOVE**
 a. This is a refinance of a property that is _not_ your principal residence.
 b. You are the original mortgagor or assumed the debt from the original mortgagor.
 _County Transfer Tax on the difference between the new loan amt. and the original amt. of the loan being refinanced. State Recordation Tax on full new loan amount._
 **REQUIRED: You must submit a recorded copy of the deed of trust being refinanced.**

I/WE understand that if I/We fail to truthfully answer or provide information to avoid collection of County Transfer and State Recordation Tax, I/We may be found guilty of a misdemeanor and, on conviction, may be subject to a fine not exceeding $5,000.00 or imprisonment not exceeding (18) months or both; and I/We authorize Prince George's County to take the appropriate steps necessary to confirm and verify the information made on this affidavit.

_____
Signature of Borrower

_____
Signature of Borrower

State of _FLORIDA_
County of _ORANGE_

PRINCE GEORGE'S COUNTY, Mr.
DO NOT WRITE IN BOX - VALIDATION AREA
APPROVED BY _WS_
#00R
**FEB 22 2007**

$154.00  RECORDATION TAX PAID
$459.25  TRANSFER TAX PAID

On this _5_ day of _JUNE_, 20_06_, before me, a Notary Public of the State and County aforesaid, personally appeared _JAMES S. PENDERGRAFT_, known to me to be, or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within affidavit, and who acknowledged that he/she/they executed that same for the purposes therein contained.

My Commission Expires: _9-26-07_

_Mary E. Spielvogel_
Notary Public Signature

Rev 8/03 (This form may be reproduced but not altered in any way)   NOTE: IT IS ILLEGAL TO NOTARIZE A FORGED SIGNATURE.

MARY E. SPIELVOGEL
MY COMMISSION # DD 217830
EXPIRES: September 26, 2007
Bonded Thru Budget Notary Services

27218    218

## State of Maryland Land Instrument Intake Sheet
☐ Baltimore City    ☒ County: Prince Georges

Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office only.
(Type or Print in Black Ink Only-All Copies Must Be Legible)

☐ Check Box if Addendum Intake Form is Attached.)

| 1 | Type(s) of Instruments | ☐ Deed | ☐ Mortgage | ☐ Other | ☐ Other |
|---|---|---|---|---|---|
| | | ☒ Deed of Trust | ☐ Lease | | |

| 2 | Conveyance Type Check Box | ☐ Improved Sale Arms-Length [1] | ☐ Unimproved Sale Arms-Length [2] | ☐ Multiple Accounts Arms-Length [3] | ☐ Not an Arms-Length Sale [9] |
|---|---|---|---|---|---|

| 3 | Tax Exemptions (if Applicable) Cite or Explain Authority | Recordation | | |
|---|---|---|---|---|
| | | State Transfer | | |
| | | County Transfer | | |

| 4 | | **Consideration Amount** | | **Finance Office Use Only** | |
|---|---|---|---|---|---|
| Consideration and Tax Calculations | Purchase Price/Consideration | $ | | **Transfer and Recordation Tax Consideration** | |
| | Any New Mortgage | $ 267,700 | Transfer Tax Consideration | $ | |
| | Balance of Existing Mortgage | $ 236,324.52 | X ( ) % = | $ | |
| | Other: | | Less Exemption Amount | $ | |
| | | $ | Total Transfer Tax = | $ | |
| | Other: | | Recordation Tax Consideration | $ | |
| | | $ | X ( ) per $500 = | $ | |
| | Full Cash Value | $ | TOTAL DUE | $ | |

| 5 | Fees | Amount of Fees | I | Doc 2 | Agent |
|---|---|---|---|---|---|
| | | Recording Charge | $ | $ | |
| | | Surcharge | $ | $ | Tax Bill |
| | | State Recordation Tax | $ | $ | |
| | | State Transfer Tax | $ | $ | C B Credit |
| | | County Transfer Tax | $ | $ | |
| | | Other | $ | $ | Ag Tax/Other |
| | | Other | $ | $ | |

| 6 | Description of Property SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i). | District | Property Tax I.D. | Grantor Liber/Folio | mat) | Parcel No | Var Log |
|---|---|---|---|---|---|---|---|
| | | | | | | 09-0878934 | ☐ (6) |
| | | Subdivision Name | | Lot (3a) | Block (3b) | SectAR(3c) | Plat Ref. | SqFt/Acreage (4) |
| | | Suburban Estates | | 4 | 1 | | |

Location/Address of Property Being Conveyed (2)
7904 Anne Court, Cl

Other Property Identifiers (if applicable)    Water Meter Account

Residential ☒ or Non-Residential ☐    Fee Simple ☐    Ground Rent ☐    Amount
Partial Conveyance" ☐ Yes ☐ No    Description/Amt. of SqFt/Acreage Transferred:

If Partial Conveyance, List Improvements Conveyed-

| 7 | Transferred From | Grantor(s) Name(s) | Doc 2 - Grantor(s) Name(s) |
|---|---|---|---|
| | | James Scott Pendergraft IV and Emmarita F. Pendergraft | |
| | | Doc I - Owner(s) of Record, if Different from Grantor(s) | Doc 2 - Owner(s) of Record, if Different from Grantor(s) |

| 8 | Transferred To | Doc. I Grantee(s) Name(s) | Doc 2 - Grantee(s) Name(s) |
|---|---|---|---|
| | | Michael Dufour ESQ. | |

New Owner's (Grantee) Mailing Address

| 9 | Other Names to Be Indexed | Doc I - Additional Names to be indexed (Optional) | Doc 2 - Additional Names to be Indexed (Optional) |
|---|---|---|---|

| 10 | Contact/Mail Information | Instrument Submitted By or Contact Person | ☐ Return to Contact Person |
|---|---|---|---|
| | | Name: | |
| | | Firm: First American Tax Service--- Connie Jackson | ☐ Hold for Pickup |
| | | Address: 1228 Euclid Avenue, Cleveland OH 44115 | |
| | | Phone-( 800 ) 221-8683 | ☒ Return Address Provided |

| 11 | IMPORTANT BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER |
|---|---|

| Assessment Information | ☐ Yes ☐ No Will the property being conveyed be the grantee's principal |
|---|---|
| | ☐ Yes ☐ No Does transfer include personal property? If yes, identify' |
| | ☐ Yes ☐ No Was property surveyed? If yes, attach copy of survey (if recorded no copy required) |

**Assessment Use Only - Do Not Write Below This Line**

| ☐ Terminal Verification | ☐ Agricultural | ☐ Whole | ☐ Part | ☐ Tran Process Verification |
|---|---|---|---|---|
| Transfer Number | | Date Received | Deed Reference | Assigned Property No |

| Year | 19 | | 19 | Geo | | Map | | Sub | | Block |
|---|---|---|---|---|---|---|---|---|---|---|
| Land | | | | Zoning | | Grid | | Plat | | Lot |
| Buildings | | | | Use | | Parcel | | Section | | Doc Cd. |
| Tot | | | | Cd | | Ex.St | | Cd. | | |

REMARKS

Distribut on. White - Clerk's Office
Canary - SDA T
Pink - Office of Finance
Goldenrod - Preparer
AOC-CC-300 (6/95)

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

## CORPORATE ASSIGNMENT OF DEED OF TRUST

Prince George's, Maryland

Date of Assignment: October 22nd, 2018
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PHH
MORTGAGE CORPORATION (FKA CENDANT MORTGAGE CORP), ITS SUCCESSORS AND
ASSIGNS at  P.O. BOX 2026, FLINT, MI  48501-2026
Assignee: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER at 8950 CYPRESS WATERS BLVD.,
COPPELL, TX  75019

Executed By: JAMES PENDERGRAFT, AKA JAMES SCOTT PENDERGRAFT IV, AN UNMARRIED
MAN, EMMARITA F. PENDERGRAFT "DECEASED"  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR PHH MORTGAGE CORP (FKA CENDANT MORTGAGE CORP)
Date of Deed of Trust:  06/09/2006 Recorded:  02/22/2007  in Book/Reel/Liber: 27218 Page/Folio: 199  In
the County of Prince George's, State of Maryland.

Property Address: 7904 ANNE COURT, CLINTON, MD  20735

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and
sufficiency of which is hereby acknowledged, the said assignor hereby assigns unto the above-named
assignee, the said Deed of Trust having an original principal sum of $267,700.00 with interest, secured
thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and
the said assignor hereby grants and conveys unto the said assignee, the assignor's interest under the
Deed of Trust.
   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said assignee forever,
subject to the terms contained in said Deed of Trust.

   IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above
written:

  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR PHH MORTGAGE
CORPORATION (FKA CENDANT MORTGAGE CORP), ITS SUCCESSORS AND ASSIGNS
On October 22nd, 2018

By:
OMAR BASPED, Vice-President

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Texas
COUNTY OF Dallas

On October 22nd, 2018, before me, DANIELA HORVATH, a Notary Public in and for Dallas in the State of Texas, personally appeared OMAR BASPED, Vice-President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

DANIELA HORVATH
Notary Expires: 01/27/2020 #128862890

DANIELA HORVATH
Notary Public, State of Texas
Comm. Expires 01-27-2020
Notary ID 128862890

(This area for notarial seal)

_____ [Space Above This Line For Recording Data]
Original Recording Date: **February 22, 2007**
Unpaid Principal Balance: **$243,924.88**
New Money: **$68,623.63**

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 23rd day of June, 2014, between **JAMES PENDERGRAFT** ("Borrower") and **NATIONSTAR MORTGAGE LLC, whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067** ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated **June 09, 2006** and recorded in **Book/Liber 27218**, Page **199** of the **Official Records (Name of Records) of PRINCE GEORGES County, MD (County and State, or other Jurisdiction)** and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at

**7904 ANNE CT, CLINTON, MD 20735,**
(Property Address)

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of **July 1, 2014**, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. **$312,548.51**, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender.

lly—Fannie Mae Uniform Instrument

8300a 01/14

(page 1 of 7)

Interest will be charged on the Unpaid Principal Balance at the yearly rate of **4.625%**, from **July 1, 2014**. Borrower promises to make monthly payments of principal and interest of U.S. **$1,430.31**, beginning on the **1st** day of **August, 2014**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of **4.625%** will remain in effect until principal and interest are paid in full. If on **July 1, 2054** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)   all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider.  By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b)   all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5. Borrower understands and agrees that:

   (a)   All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.



—Fannie Mae Uniform Instrument

8300a 01/14

(page 2 of 7)

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

6.    In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

7.    By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

8.    This Agreement modifies an obligation secured by an existing security instrument recorded in PRINCE GEORGES County, MD, upon which all recordation taxes have been paid. As of the date of this agreement, the unpaid principal balance of the original obligation secured by the existing security instrument is $243,924.88. The principal balance secured by the existing security instrument as a result of this Agreement is $312,548.51, which amount represents the excess of the unpaid principal balance of this original obligation.





mily—Fannie Mae Uniform Instrument

8300a 01/14

(page 3 of 7)

In Witness Whereof, the Lender and I have executed this Agreement.

_____ (Seal)
JAMES PENDERGRAFT  -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of ~~Maryland~~, Florida _____ Orange _____ County, to wit:

I hereby certify, that on this ___15___ day of ___August_____, in the year _2014_,

before the subscriber, ___Maria Valle_____ Notary Public,
                          (please print name)

personally appeared **JAMES PENDERGRAFT**, and acknowledged the foregoing deed to be his act.

_____
(Signature)

My commission expires :_____

> **MARIA VALLE**
> Notary Public, State of Florida
> Commission # FF 26249
> My comm. expires June 19, 2017





Family—Fannie Mae Uniform Instrument

**NATIONSTAR MORTGAGE LLC**

By: _____ (Seal) - Lender
Name: _____Krista Moore_____
Title: ____Assistant Secretary____

        8-22-14

Date of Lender's Signature
_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of ____Denton____

Before me ____Bianca Hockensmith____ / Notary Public (name/title of officer) on this day personally appeared

_____Krista Moore_____, the __Assistant Secretary_____ of

_____Nationstar Mortgage LLC_____.

known to me (or proved to me on the oath of _____ or through _____
(description of identity card or other document)) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this __22__ day of __August__, A.D., __2014__.

                                        _____
                                        Signature of Officer

                                        Notary Public
My Commission expires : __3/2/16__      Title of Officer

[seal: BIANCA HOCKENSMITH NOTARY PUBLIC STATE OF TEXAS EXPIRES 03-02-2016]

annie Mae Uniform Instrument                                    (page 5 of 7)

_____ 8·2274 _____    Krista Moore

Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title:    Assistant Secretary
_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of _____Denton_____

Before me _____Bianca Hockensmith_____ / Notary Public    _____ (name/title of officer) on this day personally appeared

_____Krista Moore_____ , the _____Assistant Secretary_____ of

_____Mortgage Electronic Registration System, Inc._____,

known to me (or proved to me on the oath of _____ or through _____
(description of identity card or other document)) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this _____22_____ day of _____August_____, A.D., _____2014_____.

_____
Signature of Officer
Notary Public

_____
Title of Officer

My Commission expires : _____3/2/11_____

8300a 01/14    ~~Single Family~~ Fannie Mae Uniform Instrument

**This Document Prepared By:**
**NATIONSTAR MORTGAGE LLC**
**350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**

**Record and Return To:**
**NATIONSTAR MORTGAGE LLC**
**350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**

**This is to certify that the within instrument was prepared by NATIONSTAR MORTGAGE LLC, one of the parties named in the instrument.**

Krista Moore ,

Assistant Secretary **for NATIONSTAR MORTGAGE LLC**



y---Fannie Mae Uniform Instrument



## Exhibit "A"



Property Address: **7904 ANNE CT, CLINTON, MD 20735**

Legal Description:

A PARCEL OF LAND LOCATED IN THE CITY OF CLINTON, COUNTY OF PRINCE GEORGES, STATE OF MARYLAND, AND KNOWN AS: BEING LOT NUMBER 4 BLOCK 1 IN SUBURBAN ESTATES AS SHOWN IN THE RECORDED PLAT/MAP THEREOF IN BOOK WWW 55 PAGE 60 OF PRINCE GEORGES COUNTY RECORDS.




Borrower: JAMES PENDERGRAFT

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, JAMES PENDERGRAFT ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated June 09, 2006, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to

Borrower: JAMES PENDERGRAFT

Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

Borrower - JAMES PENDERGRAFT

Date

Borrower -

Date

Borrower -

Date

Borrower -

Date

11/12

Borrower: JAMES PENDERGRAFT

## COMPLIANCE AGREEMENT

In consideration of Nationstar Mortgage LLC ("Lender") extending funds (the "Loan"), in connection with the closing of the property located at 7904 ANNE CT, CLINTON, MD 20735 (the "Closing"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Closing. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Loan to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument that evidence the Loan, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVISE OF COUNSEL.

_____
Borrower - JAMES PENDERGRAFT

_____
Date

_____
Borrower -

_____
Date



**Prince George's County Office of Finance, Treasury Division**
**Finance Affidavit**

County Transfer Tax 1.4%
State Recordation Tax 5.00 per 1000.00
(Rounded up to next 500.00)

**PROPERTY TAX ID #** _____ (REQUIRED)

**DO YOU OWN ANY OTHER PROPERTIES?** Y / N (PLEASE CIRCLE ONE)

I/WE CERTIFY, under the penalties of perjury, that the following are accurate responses regarding the financing we are offering for record on this date in accordance with Tax Property Article 12-102 and County Code 10-187(A)

**REQUIRED INFORMATION :** The following information refers ONLY to the loan(s) being refinanced or modified.

| | LIBER/FOLIO(S) | ORIGINAL LOAN AMOUNT(S) | UNPAID PRINCIPAL BALANCE(S) |
|---|---|---|---|
| 1) | 27218 199 | $ 267,700.00 | $ 243,924.88 |
| 2) | | | |

**A.    STATE RECORDATION TAX – PRINCIPAL RESIDENCE**
"**REQUIRED INFORMATION**" above MUST be completed by borrower when using this clause.
_____ Borrower must initial here if **ALL** qualifications listed below apply:
    a.    This is a refinance (Paying off an existing loan) of your principal residence.
    b.    You are the original mortgagor or assumed the debt from the original mortgagor. (For tax purposes)
    *Recordation tax based on difference between new loan amount and the unpaid principal balance of the loan(s) being refinanced.*
    **(NOTE: "B-1" or "B-2" MUST be initialed)**

**B.    COUNTY TRANSFER TAX – PRINCIPAL RESIDENCE – (ONLY INITIAL ONE B CLAUSE)**
"**REQUIRED INFORMATION**" above MUST be completed by borrower(s) if refinancing (Paying off an existing loan)
**1.** _____ Borrower must initial here if **ALL** qualifications listed below apply:
    a.    This is a new loan (NOT Paying off an existing loan) OR a refinance *(Paying off an existing loan)* on your principal residence.
    b.    You had a purchase money trust/mortgage (Borrowed money to purchase property).
    c.    The *purchase money* trust/mortgage has been on **record** for more than 12 months.
    *Exempt from County Transfer Tax.*    **(NOTE: If refinancing, "A" MUST be initialed)**
    REQUIRED: You must submit a recorded copy of the deed(s) of trust being refinanced.

"**REQUIRED INFORMATION**" above MUST be completed.
**2.** _____ Borrower must initial here if **ALL** qualifications listed below apply:
    a.    This is a **refinance** *(Paying off existing loan)* of your principal residence.
    b.    You did NOT have a **purchase money** trust/mortgage or **purchase money** was recorded less than 12 months ago.
    *County Transfer Tax on the difference between the new loan amt. and the original amt. of the loan(s) being refinanced.*
    REQUIRED: You must submit a recorded copy of the deed(s) of trust being refinanced. **(NOTE: "A" MUST be initialed)**

**C.    COUNTY TRANSFER TAX – NON PRINCIPAL RESIDENCE**
"**REQUIRED INFORMATION**" above MUST be completed.
_____ Borrower must initial here if **ALL** qualifications listed below apply:
    a.    This is a refinance *(Paying off existing loan)* of a property that is NOT your principal residence.
    b.    You are the original mortgagor or assumed the debt from the original mortgagor. (For tax purposes)
    *County Transfer Tax on the difference between the new loan amt. and the original amt. of the loan(s) being refinanced.*
    *State Recordation Tax on full new loan amount.*

    REQUIRED: You must submit a recorded copy of the deed(s) of trust being refinanced.
**\*\*TO QUALIFY FOR REFINANCE EXEMPTIONS – IT MUST BE SAME BORROWERS AND SAME PROPERTY\*\***

I/WE understand that if I/We fail to truthfully answer or provide information to avoid collection of County Transfer and State Recordation Tax, I/We may be found guilty of a misdemeanor and, on conviction, may be subject to a fine not exceeding $5,000.00 or imprisonment not exceeding (18) months or both; and I/We authorize Prince George's County to take the appropriate steps necessary to confirm and verify the information made on this affidavit.

By signing this form, I/WE are affirming under penalties of perjury that the borrower(s) do not claim any other property as their principal residence.

_____    _____
Signature of Borrower    Signature of Borrower

In the State of _Florida_ , at the County/City of _Orange_

I HEREBY CERTIFY, on this _15th_ day of _Aug_ , 20 _14_ , before me, the subscriber, a Notary Public, in and for said State and County/City, personally appeared, _Jerry C. Pendergraft_ , known to me to be, (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within affidavit, and acknowledged that he/she/they executed that same for the purposes therein contained, and further acknowledge the information therein is correct, and in my presence signed and sealed the same.

8239 12/12

Rev 02/10 (This form may be copied but not altered in any way)
**Alterations that affect taxation of the document will not be accepted.**

My Commission Expires:

MARIA VALLE
Notary Public, State of Florida
Commission # FF 28249
My comm: expires June 19, 2017

Notary Public Signature
NOTE: IT IS ILLEGAL TO NOTARIZE A FORGED SIGNATURE

8239 12/12

Rev 02/10 (This form may be copied but not altered in any way)
**Alterations that affect taxation of the document will not be accepted.**

## State of Maryland Land Instrument Intake Sheet
❑ Baltimore City    ❑ County: **PRINCE GEORGES**

*Information provided is for the use of the Clerk's Office, State Department of Assessments and Taxation, and County Finance Office Only.*
*(Type or Print in Black Ink Only—All Copies Must Be Legible)*

**1 Type(s) of Instruments**
( ❑ Check Box if addendum Intake Form is Attached.)

| Deed | Mortgage | Other _____ | X Loan Modification Agreement |
| Deed of Trust | Lease | | |

**2 Conveyance Type Check Box**

| Improved Sale Arms-Length *[1]* | Unimproved Sale Arms-Length *[2]* | Multiple Accounts Arms-Length *[3]* | Not an Arms-Length Sale *[9]* |

**3 Tax Exemptions (if applicable) Cite or Explain Authority**

| Recordation | $312,548.51 | 4.625% |
| State Transfer | | |
| County Transfer | | |

**4 Consideration and Tax Calculations**

| Consideration Amount | | Finance Office Use Only — Transfer and Recordation Tax Consideration | |
|---|---|---|---|
| Purchase Price/Consideration | $ | Transfer Tax Consideration | $ |
| Any New Mortgage | $68,623.63 | X ( )% = | $ |
| Balance of Existing Mortgage | $243,924.88 | Less Exemption Amount – | $ |
| Other: | | Total Transfer Tax = | $ |
| Other: | $ | Recordation Tax Consideration | $ |
| | | X ( ) per $500 = | $ |
| Full Cash Value: | $ | TOTAL DUE | $ |

**5 Fees**

| Amount of Fees | Doc. 1 | Doc. 2 | |
|---|---|---|---|
| Recording Charge | $ | $ | Agent: |
| Surcharge | $ | $ | |
| State Recordation Tax | $ | $ | Tax Bill: |
| State Transfer Tax | $ | $ | |
| County Transfer Tax | $ | $ | C.B. Credit: |
| Other | $ | $ | |
| Other | $ | $ | Ag. Tax/Other: |

**6 Description of Property**
SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|
| | | | | | ❑ (5) |
| Subdivision Name | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | Sq Ft/Acreage (4) |

Location/Address of Property Being Conveyed (2)
**7904 ANNE CT, CLINTON, MD 20735**

| Other Property Identifiers (if applicable) | Water Meter Account No. |

Residential ❑ or Non-Residential ❑    Fee Simple ❑ or Ground Rent ❑ Amount:
Partial Conveyance? ❑ Yes ❑ No    Description/Amt. of SqFt/Acreage Transferred:

If Partial Conveyance, List Improvements Conveyed:

**7 Transferred From**

| Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|
| **JAMES PENDERGRAFT** | |
| Doc. 1 – Owner(s) of Record, if Different from Grantor(s) | Doc. 2 – Owner(s) of Record, if Different from Grantor(s) |

**8 Transferred To**

| Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|
| **NATIONSTAR MORTGAGE LLC** | |

New Owner's (Grantee) Mailing Address

**9 Other Names to Be Indexed**

| Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 – Additional Names to be Indexed (Optional) |
|---|---|

**10 Contact/Mail Information**

Instrument Submitted by or Contact Person         ☒ Return to Contact Person
Name: **CoreLogic SolEx Recording**
Firm    **NATIONSTAR MORTGAGE LLC**              ❑ Hold for Pickup
Address: **350 HIGHLAND DRIVE**
**LEWISVILLE, TX 75067**    Phone: ( )       ❑ Return Address Provided

**11** IMPORTANT: *BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER*

**Assessment Information**

| ❑ Yes | ❑ No | Will the property being conveyed be the grantee's principal residence? |
| ❑ Yes | ❑ No | Does transfer include personal property? If yes, identify: |
| ❑ Yes | ❑ No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required). |

**Assessment Use Only – Do Not Write Below This Line**

| Terminal Verification | Agricultural Verification | Whole | Part | Tran. Process Verification |
|---|---|---|---|---|
| Transfer Number | Date Received: | Deed Reference: | | Assigned Property No.: |

| Year | 20 | 20 | Geo. | Map | Sub | Block |
|---|---|---|---|---|---|---|
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ. Cd. |
| Total | | | Town Cd. | Ex. St. | Ex. Cd. | |

REMARKS:

Distribution:    White – Clerk's Office    Canary – SDAT    Pink – Office of Finance    Goldenrod – Preparer    AOC-CC-300 (5/2007)

*Space Reserved for Circuit Court Clerk Recording Validation*
*Space Reserved for County Validation*

## AFFIDAVIT OF PRINCIPAL BALANCE

The Unpaid Principal Balance prior to the modification is: **$ 243,924.88**

_JAMES PENDERGRAFT_       - Borrower      _15 Aug 14_ (Date)

_____ - Borrower _____ (Date)

_____ - Borrower _____ (Date)

_____ - Borrower _____ (Date)

State of _Florida_

County of _Orange_

On this _15_ day of _August_ , 20 _14_ , before me personally appeared

_James S. Pendergraft_ known to me personally to be the person(s)

described in and who executed the same before me as (his/her) free act and deed.

My Commission Expires:           Notary Public, State of _____

                       _Maria Valle_

                       Printed Name of Notary

**MARIA VALLE**
Notary Public, State of Florida
Commission # FF 29249
My comm. expires June 19, 2017

# EXHIBIT "B"

**Real Property Data Search**

Search Result for PRINCE GEORGE'S COUNTY

| View Map | View GroundRent Redemption | View GroundRent Regi tration |
|---|---|---|

**Tax Exempt**
**Exempt Class:** NONE     **Special Tax Recapture**

**Account Identifier:**    Di trict 09 **Account Number** ▮▮▮▮▮

### Owner Information

| | | | |
|---|---|---|---|
| **Owner Name:** | PENDERGRAFT JAMES S IV & EMMARITA | **Use:** | RESIDENTIAL |
| | | **Principal Residence:** | YES |
| **Mailing Address:** | 7904 ANNE CT | **Deed Reference:** | /05708/ 00166 |
| | CLINTON MD 20735-1508 | | |

### Location & Structure Information

| | | | |
|---|---|---|---|
| **Premises Address:** | 7904 ANNE CT | **Legal Description:** | |
| | CLINTON 20735 0000 | | |

| Map: | Grid: | Parcel: | Sub District: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: | A- 5528 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0107 | 00C4 | 0000 | | 7850 | 02 | 1 | 4 | 2017 | Plat Ref: | |

| **Special Tax Areas:** | **Town:** | NONE |
|---|---|---|
| | **Ad Valorem:** | |
| | **Tax Class:** | 8 |

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1965 | 1,450 SF | YES | 11,134 SF | 001 |

| Stories | Basement | Type | Exterior | Full/Half Bath | Garage | Last Major Renovation |
|---|---|---|---|---|---|---|
| 1 | YES | STANDARD UNIT | BRICK | 2 full/ 1 half | | |

### Value Information

| | Base Value | Value | Phase-in Assessments | |
|---|---|---|---|---|
| | | A of 01/01/2017 | A of 07/01/2018 | A of 07/01/2019 |
| **Land:** | 100,700 | 100,700 | | |
| **Improvements** | 114,000 | 180,600 | | |
| **Total:** | 214,700 | 281,300 | 259,100 | 281,300 |
| **Preferential Land** | 0 | | | 0 |

### Tran fer Information

| | | |
|---|---|---|
| **Seller:** GARBER,HARRY M JR | **Date:** 06/22/1983 | **Price:** $89,000 |
| **Type** ARMS LENGTH IMPROVED | **Deed1** /05708/ 00166 | **Deed2** |
| **Seller:** | **Date:** | **Price:** |
| **Type:** | **Deed1:** | **Deed2:** |
| **Seller:** | **Date:** | **Price:** |
| **Type:** | **Deed1:** | **Deed2:** |

### Exemption Information

| Partial Exempt Assessments: | Class | 07/01/2018 | 07/01/2019 |
|---|---|---|---|
| County | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00|0.00 | 0.00|0.00 |

**Tax Exempt**
**Exempt Class:** NONE     **Special Tax Recapture**

### Home tead Application Information

**Homestead Application Status:** No Application

SDAT: Real Property Search

Homeowners Tax Credit Application Information

**Homeowners' Tax Credit Application Status:** No Appl cation      **Date:**

# EXHIBIT "C"

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

IN RE:                                                          CASE NO.: 6:18-bk-06437-KSJ
                                                                              CHAPTER 7

James S. Pendergraft, IV,

      Debtor.
                                        /

**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**

THIS CASE came on consideration without a hearing on Nationstar Mortgage LLC d/b/a Mr. Cooper's ("Secured Creditor") Motion for Relief from Stay (Docket No. ##).  No appropriate response has been filed in accordance with Local Rule 2002-4.  Accordingly, it is:

**ORDERED:**

1. Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2. The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured  Creditor's interest in the following property located at 7904 Anne Court, Clinton, Maryland 20735, in Prince Georges County, Maryland, and legally described as:

   A PARCEL OF LAND LOCATED IN THE CITY OF CLINTON, COUNTY

1

OF PRINCE GEORGES, STATE OF MARYLAND, AND KNOWN AS:

BEING LOT NUMBER 4 BLOCK 1 IN THE SUBURBAN ESTATES AS

SHOWN IN THE RECORDED PLAT/MAP THEREOF IN BOOK WWW 55

PAGE 60 OF PRINCE GEORGES COUNTY RECORDS.

3. The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured Creditor to exercise any and all *in rem* remedies against the property described above. Secured Creditor shall not seek an *in personam* judgment against Debtor(s).

4. Secured Creditor is further granted relief in order to contact the Debtor(s) by telephone or written correspondence in order to discuss the possibility of a forbearance agreement, loan modification, refinance agreement or loan workout/loss mitigation agreement.

5. Attorneys' fees in the amount of $345.00 and costs in the amount of $181.00 are awarded for the prosecution of this Motion for Relief from Stay, but are not recoverable from the Debtor(s) or the Debtor(s)' Bankruptcy estate.

### 

Attorney, Shreena Augustin, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

IN RE:                                                    CASE NO.: 6:18-bk-06437-KSJ
                                                                                      CHAPTER

James S. Pendergraft, IV,                       7

      Debtor.

_____/

<u>**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**</u>

      THIS CASE came on consideration without a hearing on Nationstar Mortgage LLC d/b/a Mr. Cooper's ("Secured Creditor") Motion for Relief from Stay (Docket No. __).    No appropriate response has been filed in accordance with Local Rule 2002-4.  Accordingly, it is:

      **ORDERED:**

1. Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2. The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured Creditor's interest in the following property located at 7904 Anne Court, Clinton, Maryland 20735, in Prince Georges County, Maryland, and legally described as:

A PARCEL OF LAND LOCATED IN THE CITY OF CLINTON, COUNTY
OF PRINCE GEORGES, STATE OF MARYLAND, AND KNOWN AS:
BEING LOT NUMBER 4 BLOCK 1 IN THE SUBURBAN ESTATES AS
SHOWN IN THE RECORDED PLAT/MAP THEREOF IN BOOK WWW
55 PAGE 60 OF PRINCE GEORGES COUNTY RECORDS.

3. The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured Creditor to exercise any and all *in rem* remedies against the property described above. Secured Creditor shall not seek an *in personam* judgment against Debtor(s).

4. Secured Creditor is further granted relief in order to contact the Debtor(s) by telephone or written correspondence in order to discuss the possibility of a forbearance agreement, loan modification, refinance agreement or loan workout/loss mitigation agreement.

5. Attorneys' fees in the amount of $345.00 and costs in the amount of $181.00 are awarded for the prosecution of this Motion for Relief from Stay, but are not recoverable from the Debtor(s) or the Debtor(s)' Bankruptcy estate.

###

Attorney, Shreena Augustin, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

2